**3 Dec.**
**201**

# PLEADING—CONSTRUCTION OF STATUTES.

[Lucas Circuit Court, April 19, 1895.]

HUNTER, TREASURER, v. AUSTIN.

1. NECESSARY AVERMENTS OF ANSWER IN ACTION, WHERE PAYMENT OF TAXES OR ASSESSMENTS IS RESISTED ON GROUNDS OF ILLEGALITY.

If, in an action brought against the owner of a city lot to recover a gross amount, as taxes, interest, penalties and assessments on such lot, the defendant claims that a portion of such taxes and assessments are illegal, it is incumbent upon him to aver and set forth in his answer what part and how much of the amount sued for is illegal and the ground of the illegality, and, in the absence of such averments, a judgment will be rendered on the pleadings for the amount prayed for in the petition.

2. LEGALITY OF LEVY FOR INTEREST ON NATURAL GAS BONDS, CAUSING TOTAL LEVY TO EXCEED NUMBER OF MILLS PRESCRIBED BY GENERAL STATUTE.

Where a statute especially authorizes a levy to be made for the payment of interest on natural gas bonds, issued by a city, a levy made thereunder is legal, although it causes the total levy of such city to be in excess of the number of mills allowed by the general statute, prescribing the maximum levy.

3. PURPOSE AND OBJECT OF SECTION 2491, OF THE REVISED STATUTES OF OHIO, AS AMENDED MARCH 1, 1895 (86 O. L., 63).

The purpose and object of section 2491 of the Revised Statutes of Ohio, as amended March 1, 1889 (86 O. L., 63), was to provide that, before a company, pursuing one method of lighting, should be allowed to come into competition with, or displace, another company, pursuing the same method of lighting, in any city, the question, as to whether the former company ahould be allowed to occupy the streets of the city in question, and operate therein, should first be submitted to the qualified voters thereof.

4. OBJECT OF SECTIONS 2310-2314 OF THE REVISED STATUTES OF OHIO, AND LIABILITY OF PROPERTY OWNERS FOR PAYMENT OF ASSESSMENT PROVIDED THEREBY IN ADDITION TO GENERAL TAX FOR STREET CLEANING PURPOSES.

The object of sections 2310-2314 of the Revised Statutes of Ohio was to provide means for the residents of a street or a district in a city of the first class to clean and sprinkle their street, or streets, under the supervision or control of a committee of their own so as to secure better service than that rendered by the city generally; and the assessment provided by such sections does not exempt such residents from paying the general tax assessed by the city for general street cleaning purposes.

KING, J.

This action comes to this court by way of appeal. The petition was filed in the common pleas court to recover $2217, as taxes, interest, penalties and assessments, upon and against lot 153, Scottwood addition, in the city of Toledo, owned by defendant.

To the petition of plaintiff an answer is filed, and to the answer a general demurrer is interposed. The answer is filed setting forth a large number—forty or fifty—of what might be called defenses, although the answer does not so state them, but they are separately stated and numbered, and may be denominated defenses to the petition.

To this answer there is a general demurrer, and the case is submitted to the court on the pleadings, and the question raised by the demurrer is the same as if the demurrer was not filed—whether the answer constitutes any defense to the petition by the plaintiff.

Since the case was brought to this court, an amended petition has been filed asking for an additional sum—being taxes, levied and assessed for the years 1893 and 1894, those not being included in the first petition, and these defenses, if they are applicable, are defenses to the amended petition as well as to the original. I shall not go over each of them, but only present some that have been argued as being the more important, although they have all been examined.

The answer sets forth, in the 19th, 20th, 23d, 24th and 25th paragraphs thereof, the levying of a tax by the city at a rate upon the dollar in excess of the legal rate, to wit:

For the year 1882 five-tenths (.5) of a mill;

For the year 1883 two-tenths (.2) of a mill;

For the year 1886 three-tenths (.3) of a mill;

For the year 1887 five-tenths (.5) of a mill;

For the year 1888 five-tenths (.5) of a mill in excess of fourteen mills, which is the limit allowed by the statute in cities of this grade and class, and to this extent, the tax sought to be collected by the plaintiff in his petition is illegal and he should not recover it.

The amount of this tax is nowhere stated in the answer, nor can it be ascertained by the pleadings. We understand counsel representing the treasurer agreed that it might be deducted, and if the counsel for the respective parties can agree upon an entry to that effect, it can be done, but we cannot find from the pleadings enough to authorize us in saying that the answer in these respects is any defense to the petition.

In the 26th, 27th and 28th paragraphs of the answer, the pleader has undertaken to state, we suppose, that the tax levied was in excess of the legal rate for the year 1889, but it does not appear that that part which he claims was levied—being interest on natural gas bonds issued by the city—was levied during that year, although we think he intends to say that. If he did, however, the allegation would not be sufficient, since the authority for that levy is contained in a statute especially authorizing it to be made, and such a levy could be legally made in excess of the fourteen mills allowed by the general statute.

The same thing may be said of the 29th paragraph in the answer, which applies to the taxes levied in 1890, and, for the reason stated above, is not invalid.

We do not find that there are any other illegal taxes set forth in the answer. Most of the questions involved in this answer have been passed upon by this court and settled.

In the forty-second paragraph of the answer it is stated that the defendant's lot is charged with a special assessment for the payment of interest on water works bonds, for the year named, to wit: from 1880 to 1892, inclusive, and is also charged in a general ordinance, a general tax for the same purpose on the value of said lot. If this were so, and the answer set forth what part of the tax sued upon was made up of the general levy to pay interest on water works bonds, and what part was made up of the assessments upon this lot to pay interest upon water works bonds, and also stated whether defendant's lot abutted upon a street where water pipe had been laid, we would be able to apply the legal principle. A general levy made under these circumstances would be illegal up to and including the year 1892, when the legislature, by the act of 1893, repealed the previous statute and enacted another authorizing a general levy for such purposes, but we cannot hold that any part of this tax is illegal, in the absence of any allegation in the answer showing what the amount of such tax is.

The plaintiff brings his action as he is authorized by statute, by setting forth the gross amount appearing upon the duplicate. It is for the defendant to aver and show what part and how much of the amount claimed upon the petition is illegal and the ground of its illegality. This is not averred or shown. If the parties can agree what that is, and the plaintiff will remit from his petition that illegal amount, it may be done, but we cannot render any judgment requiring it to be done.

It is claimed that a contract was entered into with the Western Electric Light and Power company—a new organization—on the 8th of November, 1888, for lighting the streets with electricity; that an ordinance was passed January 10, 1887, by which said company went into operation and entered into a contract with the city without having the question of authorizing its said operation left to the voters of the city. But we do not think the statute relied upon by the defendant is applicable to that case, since the clear intention, purpose and object of that statute was to provide that before a company pursuing one method of lighting should displace or come into competition with another company having the same methods of lighting should be allowed to occupy the streets of the city,

the question of allowing its operation within the city should be first submitted to the qualified voters, but no such question could be raised when an electric lighting company for the first time appeared in the city of Toledo. It displaced no other company having a similar method of lighting, and there was no necessity for voting upon it.

The allegations in the answer show that this contract was made in 1888. The first statute from which any inference can be drawn that it was necessary to vote upon this question was passed upon the 1st day of March, 1889, and as an amendment to sections 2474 and 2491 of the Revised Statutes, and therefore was not in force when the city of Toledo entered into this contract with the Electric Light company. The statute then in force did not embrace within its term electric lighting companies.

It is further claimed that a number of amounts have been assessed upon this lot for cleaning or sprinkling the street, under a statute which authorizes the inhabitants of a street, or part thereof, to organize and petition the council to allow them to take care of their street in a certain manner and authorizes them to appoint a committee of two freeholders, who, in connection with the city engineer, shall determine the amount to be assessed on all the property abutting on the street and included in a district for such purpose for the year, which amount they shall send to the said council, who shall authorize it to be assessed against the property, requiring property owners to pay it into the city treasury, and authorizing the city, in case it is not paid, to bring suit against the property owners to collect it; but in case none of these remedies are pursued, then that the tax may be certified to the county auditor and by him placed upon the tax duplicate to be collected by the county treasurer, as other taxes are collected. And it is said that for the same purpose the city of Toledo, by general ordinance, levies a certain per cent each year for the cleaning of other streets than the one in question, and which levy is also made upon defendant's property. We do not think these conflict. The object or purpose of this statute was to authorize the citizens of a district or street to so organize themselves that they may have the cleaning and sprinkling of their streets, and perhaps the setting and care of shade trees, carried on by a committee of their own—appointed by themselves, with the object and purpose of securing better or more complete or a different character of services than those which the city rendered generally, and it would not relieve those who dwelt in that particular district from the obligation to pay the general tax assessed for street cleaning purposes, and no method is provided by statute by which the county auditor, in making up the tax duplicate, could omit that levy from the residents of this district, for the auditor could not know where these districts are, or who have been so assessed, since this record is kept alone by the city, and if these taxes are paid when they become due, no record of it appears, either in the auditor's or treasurer's office.

We think these are the only objections that need to be noticed, and for these reasons the demurrer to the answer should be sustained and a judgment rendered for the plaintiff for the amount claimed by him in the petition and amended petition, less any of the amounts which it has been stated, or will be stated by the plaintiff's counsel, that the plaintiff is not entitled to recover. We should say, in that connection, that it was stated in the argument that the penalties included in the amount sued for should be remitted, and that should be done in accordance with that concession.

*J. A. Barber*, Attorney for Plaintiff.

*D. R. Austin*, Attorney for Defendant.